SHAW, Justice.
 

 Green Tree-AL LLC (“Green Tree”), the plaintiff in a replevin action pending below, appeals from the denial of its motion to compel arbitration of the counterclaims of the defendant/counterclaimant, Lisa K. White. We reverse and remand.
 

 Facts and Procedural History
 

 In 1999, White purchased a manufactured home from Southland Quality Homes, Inc. (“Southland”). In connection with this purchase, White executed a document titled “Manufactured Home Retail Installment Contract and Security Agreement” (“the contract”). The contract listed Green Tree as an “Assignee.” Page 4 of the contract was titled “Assignment by Seller” and indicated that Southland was assigning the contract to the “Assignee,” i.e., Green Tree.
 
 [1]
 
 Additionally, the contract contained an arbitration provision that stated, in pertinent part:
 

 “All disputes, claims or controversies arising from or relating to this Agreement or the relationships which result from this Agreement, or the validity of this arbitration clause or the entire Agreement, shall be resolved by binding arbitration by one arbitrator selected by you with my consent. This arbitration agreement is made pursuant to a . transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, Title 9 United States Code. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort and property disputes, will be subject to binding arbitration in accord with this agreement. I agree that I shall not have the right to participate as a representative or a member of any class of claimants pertaining to any claim arising from or relating to this Agreement. The parties agree that the arbitrator shall have all powers provided by law and the Agreement. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation or to foreclose on the collateral. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration in this
 
 *1189
 
 Agreement, including the filing of a counterclaim in a suit brought by you pursuant to this provision.”
 

 (Capitalization in original.)
 

 Subsequently, in July 2007, Green Tree sued White, alleging that White had failed to make payments pursuant to the contract and seeking, among other things, possession of the manufactured home. Green Tree later filed a request that the case be placed on the trial court’s administrative docket, indicating that the parties were working on resolving the arrearage. The case was ultimately removed from the administrative docket, and a default judgment was entered in Green Tree’s favor on April 7, 2008. On April 24, 2008, White moved to set aside the default judgment, and the trial court granted her motion. White then filed an answer, as well as a counterclaim against Green Tree seeking damages based on abuse of process, slander of title, the tort of outrage, fraud, and negligence and wantonness.
 

 Green Tree moved to compel arbitration of White’s counterclaims and to stay the case pending arbitration. The motion was supported by evidentiary exhibits. Green Tree’s motion was set for a hearing; on the day of the hearing, White filed a brief opposing Green Tree’s motion.
 
 [2]
 
 Subsequently, the trial court entered an order denying the motion to compel. Green Tree appeals.
 

 Standard of Review
 

 “ ‘[T]he standard of review of a trial court’s ruling on a motion to compel arbitration at the instance of
 
 either
 
 party is a
 
 de novo
 
 determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.’
 
 Ex parte Roberson,
 
 749 So.2d 441, 446 (Ala.1999). Furthermore:
 

 “ ‘A motion to compel arbitration is analogous to a motion for summary judgment.
 
 TranSouth Fin. Corp. v. Bell,
 
 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce.
 
 Id.
 
 “After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” ’
 

 “Fleetwood Enters., Inc. v. Bruno,
 
 784 So.2d 277, 280 (Ala.2000) (quoting
 
 Jim Burke Auto., Inc. v. Beavers,
 
 674 So.2d 1260, 1265 n. 1 (Ala.1995) (emphasis omitted)).”
 

 Vann v. First Cmty. Credit Corp.,
 
 834 So.2d 751, 752-53 (Ala.2002).
 

 Discussion
 

 “The Federal Arbitration Act, 9 U.S.C. § 1 et seq. (‘the FAA’), provides that ‘[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable.... ’ 9 U.S.C. § 2. The FAA ‘mandates the arbitration of claims encompassed by an arbitration clause that is contained in a binding contract that involves interstate commerce.’
 
 Ex parte Conference America, Inc.,
 
 713 So.2d 953, 955 (Ala.1998).”
 

 Elizabeth Homes, L.L.C. v. Cato,
 
 968 So.2d 1, 3-4 (Ala.2007).
 

 In support of its motion to compel arbitration, Green Tree presented a copy of the contract, which, as noted above, con
 
 *1190
 
 tained the arbitration provision. Additionally, Green Tree submitted the affidavit of Robert D. Eller, a regional manager for Green Tree, who testified regarding the effect on interstate commerce of the transaction evidenced by the contract. Green Tree thus met its “ ‘ “burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce.” ’ ”
 
 Vann,
 
 834 So.2d at 753 (quoting other cases). The burden thus shifted to White “ ‘ “to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” ’ ”
 
 Id.
 
 (quoting other cases).
 

 In response to the motion to compel arbitration, White argued that no contract calling for arbitration existed between Green Tree and White, that Green Tree was not a signatory to the contract, and that the contract limited arbitration to the signatories. Specifically, White correctly noted that the “definitions” portion of the contract provided as follows: “T,’ ‘me,’ ‘my’ means the Buyer(s). “You,’ ‘your’ means the Seller and also the Assignee or their affiliates (after the Contract is assigned by Seller). The ‘parties’ means the Buyer and Seller, together.... ” The arbitration provision stated that only the “parties,” which White contends does not include Green Tree, agreed to arbitration:
 

 “The
 
 parties
 
 agree and understand that they choose arbitration instead of litigation to resolve disputes. The
 
 parties
 
 understand that they have a right or opportunity to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE
 
 PARTIES
 
 VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY. TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN).”
 

 (Capitalization in original; emphasis added.) Thus, White argued that she agreed to arbitrate claims only with Southland. The trial court agreed, holding:
 

 “Green Tree has failed to meet its burden of establishing the existence of a contract between it and Lisa White calling for arbitration. In this case, the arbitration provision is specifically applicable only to the ‘parties’ who executed the Retail Installment Contract. The purchaser is Lisa K. White. The seller is Southland Quality Homes. Green Tree is not a ‘party1 to the contract. The Retail Installment Contract limits the applicability of the contract to the ‘parties’ Lisa K. White and Southland Quality Homes. The language of the Retail Installment Contract is not broad enough to reach Green Tree, who is a nonsignatory. Therefore, Green Tree is not entitled to compel arbitration of White’s claims against it by the terms of the Retail Installment Contract.”
 

 /.
 

 On appeal, Green Tree challenges the trial court’s holding that Green Tree could not enforce the arbitration provision. White reiterates the argument she presented below and that was adopted by the trial court.
 

 That one may be compelled to arbitrate a claim is not necessarily premised on the fact that both participants in the arbitration proceedings are signatories to a contract calling for arbitration. Specifically, this Court has held that in numerous situations one may compel arbitration under a contract to which it is not a party, or that one who is not a signatory to a contract calling for arbitration must nevertheless arbitrate his or her claims. See, e.g.,
 
 Ex parte Stanley,
 
 776 So.2d 85, 89
 
 *1191
 
 (Ala.2000) (“[B]oth Federal courts and Alabama courts have enforced exceptions to this rule, so as to allow a nonsignatory, and even one who is not a party, as to a particular contract, to enforce an arbitration provision within that same contract.”). However, “unless the arbitration provision contains sufficiently broad language that indicates that the nonsignatory was contemplated as a party, we have repeatedly held that the nonsignatory lacks ‘standing’ to enforce the arbitration agreement.”
 
 Smith v. Mark Dodge, Inc.,
 
 934 So.2d 375, 380-81 (Ala.2006).
 

 First, Green Tree contends that, as an assignee of the contract, it was entitled to all the rights and privileges held by Southland under the contract. Generally, an assignee steps into the shoes of an assignor who was the signatory of an arbitration provision, thus allowing the assign-ee to enforce that arbitration provision.
 
 Nissan Motor Acceptance Corp. v. Ross,
 
 703 So.2d 324, 326 (Ala.1997). In
 
 Green Tree Financial Corp. v. Channell,
 
 825 So.2d 90 (Ala.2002), a financial-services company, “Green Tree Financial,” financed the purchase of a mobile home. Green Tree Financial was an assignee of a sales contract and installment agreement between the purchasers of the mobile home and Johnson Mobile Homes, the seller of the mobile home. The purchasers later sued Green Tree Financial and Johnson Mobile Homes, both of which moved to compel arbitration. We stated:
 

 “As an assignee, Green Tree [Financial] simply steps into the shoes of the assignor, Johnson Mobile Homes, a signatory to the installment agreement, which contained the arbitration clause. See
 
 Nissan Motor Acceptance Corp. v. Ross,
 
 703 So.2d 324, 326 (Ala.1997) (citing
 
 Upchurch v. West,
 
 234 Ala. 604, 609, 176 So. 186, 190 (1937), overruled on other grounds,
 
 Dominex, Inc. v. Key,
 
 456 So.2d 1047 (Ala.1984)). ‘A valid assignment gives the assignee the same rights, benefits, and remedies that the assignor possesses.’ 703 So.2d at 326. Therefore, as a result of the assignment of the installment agreement to Green Tree [Financial], it holds the same rights, benefits, and remedies that Johnson Mobile Homes held under the
 
 installment agreement.”
 

 825 So.2d at 95. See also
 
 Ocwen Loan Servicing, LLC v. Washington,
 
 939 So.2d 6, 9 (Ala.2006) (“As a general rule, an assignee stands in the shoes of the assign- or and may enforce an arbitration agreement entered into between the assignor and another party.”).
 

 White argues that parts of the arbitration provision appear to designate that White and Southland agreed, as the “parties” to the contract, to arbitrate disputes against each other; White thus argues that Green Tree, even as an assignee, was not contemplated as a party capable of enforcing arbitration. However, we note that other parts of the arbitration provision
 
 do
 
 contemplate the involvement of other entities, including Green Tree, in arbitration. Specifically, in parts of the provision, Green Tree, which is included in the definition of “you,” is referenced as participating in the arbitration process:
 

 “All disputes, claims or controversies arising from or relating to this Agreement or the relationships which result from this Agreement ... shall be resolved by binding arbitration by one arbitrator selected by
 
 you
 
 with my consent.... THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY
 
 YOU....
 
 Notwithstanding anything hereunto the
 
 *1192
 
 contrary,
 
 you
 
 retain an option to use judicial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation or to foreclose on the collateral.... The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration in this Agreement, including the filing of a counterclaim in a suit brought by
 
 you
 
 pursuant to this provision.”
 

 Additionally, the scope of the arbitration agreement is clearly broad enough to apply to disputes between Green Tree and White. Specifically, the arbitration provision specifies that
 
 all
 
 disputes arising from or relating to the contract “or the relationships which result from” the contract shall be resolved by arbitration.
 

 Finally, this Court has previously noted: “‘[There is a] strong presumption in favor of arbitration’ created by the Federal Arbitration Act.
 
 See, generally, Blue Cross Blue Shield of Alabama v. Rigas,
 
 928 So.2d 1077, 1083 (Ala.2005). ‘In interpreting an arbitration provision, “any doubts concerning the scope of ar-bitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbi-trability.”’
 
 The Dunes of GP, L.L.C. v. Bradford,
 
 966 So.2d 924, 927 (Ala.2007) (quoting
 
 Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp.,
 
 460 U.S. 1, 24-25 (1983)) (emphasis omitted). Indeed, ‘ “a motion to compel arbitration should not be denied ‘unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.’ ” ’
 
 Id.
 
 (quoting
 
 Ex parte Colquitt,
 
 808 So.2d 1018, 1024 (Ala.2001), quoting in turn
 
 United Steelworkers of America v. Warrior & Gulf Navigation Co.,
 
 363 U.S. 574, 582-83 (1960)) (emphasis omitted). ‘While, “as with any other contract, the parties’ intentions control, ... those intentions are generously construed as to issues of arbitrability.” ’
 
 Carroll v. W.L. Petrey Wholesale Co.,
 
 941 So.2d 234, 237 (Ala.2006) (quoting
 
 Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
 
 473 U.S. 614, 626 (1985)).”
 

 Kenworth of Mobile, Inc. v. Dolphin Line, Inc.,
 
 988 So.2d 534, 544-45 (Ala.2008).
 

 Although the language of the arbitration provision defining “parties” has Southland and White agreeing to arbitrate their claims, the provision also contemplates Green Tree’s participation in the arbitration process. Further, Green Tree, as the assignee designated in the contract, is entitled to all the rights and privileges held by Southland under the contract. Finally, the scope of the arbitration provision is broad and specifically provides for the arbitration of disputes arising from or related to
 
 relationships
 
 resulting from the contract. Given these facts and the broad federal policy in favor of arbitration, we conclude that the trial court erred in holding that Green Tree had no standing to enforce the arbitration provision.
 

 II.
 

 The second issue is whether, even if Green Tree could enforce the arbitration provision, White’s counterclaims were subject to arbitration. The trial court held that they were not:
 

 “The Retail Installment Contract provides that ‘all disputes, claims, or controversies arising from or relating to’ the
 
 *1193
 
 Retail Installment Contract between Lisa K. White and Southland Quality-Homes shall be subject to binding arbitration. White’s counterclaim against Green Tree asserts claims for fraud on the court, abuse of process, slander of title, outrage, negligence and wantonness claims. The claims relate to Green Tree’s conduct following an Order from this Court. This Court is a party to that Order and the Court is an entity offended if the Order is not obeyed. This Court does not agree to arbitrate the claims. Claims for contempt or violation of a court order or abuse of or disrespect for judicial authority are not appropriate for arbitration.
 
 In re Grant,
 
 281 B.R. 721 (S.D.Ala.2000).”
 

 White contends that her counterclaims “relate to Green Tree’s conduct before the trial court” and that, under
 
 Grant v. Cole (In re Grant),
 
 281 B.R. 721 (S.D.Ala.2000), claims “for contempt or violation of a court order or abuse of or disrespect for judicial authority are not appropriate for arbitration.” White’s brief, at 17-18.
 

 The order to which the trial court and White refer is not included in the record before us. In an affidavit attached to her motion to set aside the default judgment, White claimed that, sometime after August 9, 2007, she appeared at a hearing and demonstrated to the trial court that she was current on her payments and that the trial court acknowledged or expressed both to her and to Green Tree’s counsel that White’s obligation was current. Green Tree, on the other hand, disputes these assertions, arguing that the record indicates that no such hearing took place in this case and further that no order declaring that White was current on her obligation exists. Instead, Green Tree suggests that White is confusing the instant case with a previous action that was dismissed; Green Tree asserts that the instant action was filed after White had again defaulted on her payments.
 

 The record reveals no motion for contempt or other request for relief premised on Green Tree’s alleged violation of the trial court’s instructions and no order directing Green Tree’s conduct with respect to its collection of White’s purported debt.
 

 “It has long been our rule that an appellate court may not rely on facts outside the record.... Moreover, a court may not ordinarily take judicial notice of the records of another court.
 
 See Belyeu v. Boman, 252
 
 Ala. 371, 373, 41 So.2d 290, 291 (1949) (holding that the Supreme Court of Alabama may not take judicial notice of the records of the trial court unless those records appear in the clerk’s record or in the records of the Supreme Court);
 
 Worthington v. Amerson,
 
 741 So.2d 437, 438 n. 2 (Ala.Civ.App.1999) (‘Generally, a court may not take judicial notice of the records of another court.’).”
 

 Ex parte Jett, 5
 
 So.3d 640, 645-46 (Ala.2007) (See, J., concurring specially). Therefore, there is no basis for this Court to consider White’s claims as an attempt to enforce a previous order of the trial court; instead, for all that appears, White’s counterclaims are all premised on actions taken by Green Tree in servicing the loan and seek damages for those actions. Therefore, the trial court erred in holding that the counterclaims were “for contempt or violation of a court order or abuse of or disrespect for judicial authority” and thus not appropriate for arbitration.
 

 Ill
 

 Finally, White contends on appeal that the arbitration provision in this
 
 *1194
 
 case is unconscionable.
 
 [3]
 

 “It is well settled that ‘[t]he burden of proving unconscionability of an arbitration agreement rests with the party challenging the agreement.’
 
 Green Tree Fin. Corp. of Alabama v. Vintson,
 
 753 So.2d 497, 504 (Ala.1999);
 
 Briarcliff Nursing Home, Inc. v. Turcotte,
 
 894 So.2d 661, 665 (Ala.2004); see also
 
 Young v. Jim Walter Homes, Inc.,
 
 110 F.Supp.2d 1344, 1347 (M.D.Ala.2000). The party challenging the agreement must demonstrate that ‘(1) [the challenged] terms ... are grossly favorable to a party that has (2) overwhelming bargaining power.’
 
 American Gen. Fin., Inc. v. Branch,
 
 793 So.2d 738, 748 (Ala.2000) (summarizing the four factors set forth in
 
 Layne v. Garner,
 
 612 So.2d 404, 408 (Ala.1992)).”
 

 Sloan Southern Homes, LLC v. McQueen,
 
 955 So.2d 401, 403 (Ala.2006).
 

 White contends that the arbitration provision is unconscionable because, she says, the terms are overly broad and it “exempts] the defendants from the duty to arbitrate and expressly reserves] the right to try to a jury their claims.” White’s brief, at 23. However, this Court has previously rejected similar arguments regarding similarly worded arbitration provisions. See, e.g.,
 
 Green Tree Fin. Corp. of Alabama v. Vintson,
 
 753 So.2d 497 (Ala.1999);
 
 Green Tree Fin. Corp. v. Wampler,
 
 749 So.2d 409 (Ala.1999); and
 
 Conseco Fin. Corp.-Alabama v. Boone,
 
 838 So.2d 370, 373 (Ala.2002).
 

 White also argues, citing
 
 Harold Allen’s Mobile Home Factory Outlet, Inc. v. Butler,
 
 825 So.2d 779, 783 (Ala.2002), that the arbitration provision is unconscionable because, she says, Green Tree essentially has the power to pick the arbitrator. However, the arbitration provision held to be unconscionable in
 
 Harold Allen’s Mobile Home
 
 allowed the seller “to select the arbitrator with
 
 no input
 
 from” the purchaser. 825 So.2d at 783 (emphasis added). The arbitration provision in the instant case essentially requires the parties to mutually agree on the arbitrator; thus,
 
 Harold Allen’s Mobile Home
 
 is clearly distinguishable.
 

 Finally, White contends that Green Tree possessed overweening bargaining power. However, it was White’s burden to produce evidence substantiating this assertion, and no such evidence is found in the record. See
 
 Blue Cross Blue Shield of Alabama v. Rigas,
 
 923 So.2d 1077, 1090 (Ala.2005), and
 
 Leeman v. Cook’s Pest Control, Inc.,
 
 902 So.2d 641, 648 (Ala.2004). Therefore, we conclude that White has failed to establish that the arbitration provision in this case is unconscionable.
 

 Conclusion
 

 The trial court’s order denying the motion to compel arbitration of White’s counterclaims is reversed, and the case is remanded for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
 

 [1]
 

 . This page, which White initialed, stated that Southland “sells, assigns, and transfers its entire right, title, and interest in” the contract to Green Tree.
 

 [2]
 

 . A transcript of the hearing was not made part of the record.
 

 [3]
 

 . The trial court did not base its decision on this premise; however, White raised it in her opposition to Green Tree's motion to compel arbitration.